UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GABRIEL IGLESIAS

    Petitioner,

v.                                                                    Case No. 5:16-cv-642-Oc-33PRL

SECRETARY, DEPT. OF
CORRECTIONS, et al.,

    Respondents.
_____\

## ORDER

Gabriel Iglesias, a state prisoner acting *pro se*, initiated this case by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondents filed a Response seeking denial of the Petition. (Doc. 6). Mr. Iglesias filed a Reply. (Doc. 10). Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. *See* Habeas Rule 8(a). For the reasons discussed below, the Petition is denied.

### PROCEDURAL HISTORY

In July 2012, a jury in Citrus County, Florida, found Mr. Iglesias guilty of two counts of arson and two counts of burglary of a conveyance. (Respondents' Appendix, Doc. 6, Exh. A, pp. 85-88, 328-30) (hereafter "Exh").

According to the testimony presented at trial, Mr. Iglesias entered the unoccupied vehicles of Kelly and William Lemming and set the trucks on fire. Mr. Iglesias and Mr. Lemming had previously agreed to trade trucks after Mr. Iglesias fixed Mr. Lemming's truck. (Exh. B, Trial Transcript, pp. 37-38). Mr. Lemming took his truck back when Mr. Iglesias did not follow through with the agreement. Mr. Lemming towed his truck to the home of his friend and Mr. Iglesias's neighbor, William Stuelke. Mr. and Mrs. Lemming decided to stay the night at the home of Mr.

1

Stuelke in Floral City and tow the truck to their home in Pinellas County the next day, September 5, 2010. (*Id.* at 41-46).

The Lemmings, Mr. Stuelke, and Mr. Stuelke's girlfriend, Randee Roemer, were all at Mr. Stuelke's home when the fires occurred. (*Id.* at 46). The Lemmings and Ms. Roemer testified that they heard what sounded like Mr. Iglesias's truck outside. (*Id.* at 47, 81, 108-09, 111). They went outside and saw the vehicles on fire. (*Id.* at 47). Mr. Lemming testified that he could see Mr. Iglesias in the tree line. (*Id.* at 48). Mrs. Lemming testified she could see Mr. Iglesias's taillights but not Mr. Iglesias. (*Id.* at 84). Ms. Roemer testified she did not see anything but the fires. (*Id.* at 109-11). Mr. Stuelke did not testify at the trial.

Rick and Robin Anderson, who also lived near Mr. Iglesias, were his alibi witnesses at the trial. Mr. Anderson testified that Mr. Iglesias was at his house until around 2:30 a.m. and had just left when Mr. Stuelke called asking where Mr. Iglesias was. (*Id.* at 206). Mrs. Anderson testified that Mr. Iglesias was walking home to his house from her house when her husband received a call from Mr. Stuelke and her husband replied "What? Your truck's on fire?" (*Id.* at 223). Mr. Iglesias testified at trial, stating that he was with the Andersons until 12:30 or 1:00 a.m. (*Id.* at 242).

The fire marshal who investigated the case testified as an expert and concluded that the fires were arson and were started by a human in the passenger compartments of the trucks. The fire marshal, who also arrested Mr. Iglesias, testified that Mr. Iglesias told him he was in bed at home that night by 10 p.m. (*Id.* at 135-83). Mr. Iglesias testified that he did not make that statement. (*Id.* at 253).

Ms. Roemer testified that some months after the fires, Mr. Iglesias told her that he was not going to admit anything until after the trial. She assumed this meant he set the trucks on fire even though he did not admit this to her. The State impeached her with her prior deposition testimony

that Mr. Iglesias did tell her he set the trucks on fire. (*Id.* at 103-32). Mr. Iglesias testified that he never told Ms. Roemer that he set the trucks on fire. (*Id.* at 248-49).

Mr. Iglesias was sentenced to 15 years' imprisonment on the first arson count; 15 years of consecutive probation on the second arson count; and 5 years' probation on the burglary counts, to run concurrently with the 15-year term of probation. Mr. Iglesias's conviction and sentence were affirmed by the Fifth District Court of Appeal, *per curiam* without written opinion, on August 30, 2013. (Exh. G); *Iglesias v. State*, 118 So.3d 814 (Fla. 5th DCA 2013) (table).

On March 20, 2014, Mr. Iglesias filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, raising 10 grounds for relief. (Exh. J). The trial court summarily denied Grounds 3-10 but ordered an evidentiary hearing as to Grounds 1 and 2 (trial counsel's alleged failure to convey a plea offer and depose William Stuelke).

On October 8, 2014, the trial court conducted an evidentiary hearing. The trial court denied Grounds 1 and 2 of the motion on October 23, 2014. Mr. Iglesias appealed, briefing Grounds 1, 2, 4, and 9 for appellate review. The Fifth District Court of Appeal affirmed *per curiam* without written opinion. *Iglesias v. State*, 184 So.3d 536 (Fla. 5th DCA 2016) (table); (Exh. O).

## THE PRESENT PETITION

Mr. Iglesias, *pro se*, filed a timely federal habeas petition in this Court on October 21, 2016. (Doc. 1). He alleges four grounds for relief, alleging that trial counsel was constitutionally ineffective for failing to:

1. Convey a 5-year plea offer;
2. Depose witness William Stuelke and present associated exculpatory evidence;
3. Move to suppress Mr. Iglesias's pre-*Miranda* statement; and,
4. Conduct an adequate pretrial investigation.

(*Id.*) The State contends that Ground 4 was not properly presented to the state courts and is now procedurally defaulted and barred from federal habeas review, and that Grounds 1, 2, and 3 are without merit. (Doc. 6). Mr. Iglesias argues that he is entitled to review of Ground 4 pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012) (creating exception to procedural default rule where counsel

3

during initial-review collateral proceedings was ineffective or defendant did not have counsel). (Doc. 10).

## AEDPA STANDARD OF REVIEW

The role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited. *See Williams v. Taylor*, 529 U.S. 362, 403-404, 120 S. Ct. 1495, 1518-19 (2000). Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding." *See* 28 U.S.C. § 2254(d)(1)- (2). The "contrary to" and "unreasonable application" clauses provide separate bases for review. *Wellington v. Moore,* 314 F.3d 1256, 1260-61 (11th Cir. 2002). A state court's rejection of a claim on the merits is entitled to deference regardless of whether the state court has explained the rationale for its ruling.

Furthermore, under § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The AEDPA directs that only clear and convincing evidence will rebut the presumption of correctness afforded the factual findings of the state court. *See* § 2254(e)(1). Therefore, it is possible that federal review may determine that a factual finding of the state court was in error, but deny the Petition because the overall determination of the facts resulting in the adjudication was reasonable. *See Valdez v. Cockrell*, 274 F.3d 941, 951 n. 17 (5th Cir. 2001).

## EXHAUSTION AND PROCEDURAL DEFAULT

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts

that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The prohibition against raising unexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

A federal claim is subject to procedural default where the petitioner failed to properly exhaust it in state court and it is obvious that the unexhausted claim would now be barred under state procedural rules. *See Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). A procedural default may be excused if the petitioner establishes (1) cause for the default and prejudice, or (2) a fundamental miscarriage of justice. *Id.* at 1306. The fundamental-miscarriage-of-justice exception is "exceedingly narrow in scope" because it requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

## INEFFECTIVE ASSISTANCE OF COUNSEL

State court rulings on ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). "Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice . . . with performance being measured against an 'objective standard of reasonableness' under 'prevailing professional norms.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Strickland*, 466 U.S. at 688) (internal citations omitted). The Supreme Court has stated that in reviewing ineffective assistance of counsel claims brought by state prisoners seeking habeas corpus relief subject to 28 U.S.C. § 2254(d)(1) and/or (2), the standard to be applied is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The Supreme Court "require[s] that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citing *Pinholster*, 563 U.S. at 190).

## DISCUSSION

**GROUND ONE:**       Ineffective assistance of trial counsel – failure to convey a 5-year plea offer

In Ground 1, Mr. Iglesias argues that trial counsel failed to convey to him a 5-year plea offer from the State. (Doc. 1). In rejecting this claim on post-conviction review, the state court first summarized the relevant testimony at the evidentiary hearing:

> Mr. [Harold] Silver testified that he was originally co-counsel to Mr. Ed Tilton and entered a Notice of Appearance on August 2, 2011. Mr. Tilton was subsequently suspended from the practice of law and Mr. Silver became the defendant's sole attorney and an order appointing Mr. Silver was entered January 23, 2012. Mr. Silver also testified that he received copies of discovery from the State attorney and he personally sent copies to the defendant. Within the discovery material there was a written plea offer of 10 years in DOC. Mr. Silver had no recollection of discussing this specific plea offer however in general the defendant was adamant that he was not going to accept *any* plea. Mr. Silver further testified that he was not aware of a 5 year plea offer because it was made prior to his representation.
>
> …
>
> Next, Mr. Henry Iglesias the defendant's father testified. Mr. Iglesias testified that he was at every meeting between Mr. Silver and his son . . . Additionally, a plea offer of 10 years was originally mentioned by Mr. Tilton and Mr. Silver however an offer of 5 years was never mentioned.
>
> Thereafter, the defendant testified that his first attorney was Joe Sowell from the Public Defender's Office and when he was arrested a second time. Mr. Sowell had to withdraw due to a conflict. Mr. Sowell never mentioned a plea offer. The first time the defendant became aware of the 5 year plea offer was when he reviewed his PSI. However, a 10 year plea offer was conveyed by Mr. Tilton and thought it was only for the separate burglary case not the present case. The defendant also testified he would have accepted a 5 year plea offer but not the 10 year plea offer. He also was willing to consider a plea right before trial because he felt Mr. Silver was not prepared.
>
> …
>
> Then, Mr. Paul Norville testified that he was the prosecuting attorney in this case and has been since inception . . . Mr. Norville testified that he sent the 5 year plea offer to Mr. Sowell. The 5 year plea was based on the possibility that the defendant would be an informant for a federal agency. However, the federal agency did not use the defendant as an informant because he was revealing his potential informant status to people. There was no other plea offer and in his contacts with the defendant he felt the defendant would go to trial based on the defendant's demeanor and attitude. Mr. Norville also testified that he thought the defendant

> had a very good case based on the alibi witnesses. Mr. Norville further testified that he made a second offer on May 7, 2011 that included resolution of both cases. This new offer in effect revoked the previous 5 year offer. After Mr. Tilton was appointed there were no other plea discussions because the defendant always wanted to go to trial. Prior to jury selection a possible plea was discussed but no offer made.
>
> …
>
> The final witness was Mr. Ed Tilton who testified that he represented the defendant prior to Mr. Silver. He was aware of the 10 year plea offer and showed it to the defendant that stated he wanted to go to trial.

(Exh. J, pp. 291-95).

Ultimately, the state court found that Mr. Iglesias had not demonstrated that trial counsel was ineffective regarding the plea: "The Court found that Mr. Silver properly discussed plea options with the defendant and the defendant was adamant about not accepting a plea." (*Id.* at 296). The state court's ruling on this issue was affirmed by the Fifth District Court of Appeal. (Exh. O).

The state court found trial counsels' testimony at the evidentiary hearing more credible than Mr. Iglesias's and his father's. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). "Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Id.* "In the absence of clear and convincing evidence, we have no power on federal habeas review to revisit the state court's credibility determinations." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013); *see also Nejad v. Attorney Gen., State of Ga.* 830 F.3d 1280, 1292 (11th Cir. 2016) ("[A] federal court engaged in habeas review is not empowered to second guess a state court's credibility determination based on speculation about the interests of a witness[.]")

However, even assuming, *arguendo*, that trial counsel was deficient, Mr. Iglesias must still satisfy the *Strickland* prejudice prong. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme

7

Court "clarified that the Sixth Amendment right to effective assistance of counsel extends specifically 'to the negotiation and consideration of plea offers that lapse or are rejected.'" *Osley v. United States*, 751 F.3d 1214, 1221 (11th Cir. 2014) (quoting *In re Perez*, 682 F.3d 30, 932 (11th Cir. 2012) (per curiam)). In order to establish prejudice, the defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164

Mr. Iglesias has failed to satisfy the three-part test set forth in *Lafler*. First, Mr. Iglesias has not shown there was a reasonable probability the 5-year plea offer would have been presented to the court. The prosecutor testified that the 5-year plea offer was premised on Mr. Iglesias's potential as a federal informant, and that Mr. Iglesias had jeopardized that opportunity. And, as the trial court noted at the conclusion of the hearing, between the September 21, 2010, 5-year written plea offer and the May 18, 2011, 10-year written plea offer, Mr. Iglesias had incurred additional criminal charges in separate cases. (Exh. I, p. 111).

Mr. Iglesias has not demonstrated that he would have accepted the plea, especially where trial counsel testified at the post-conviction evidentiary hearing that Mr. Iglesias was resistant to any plea offer. Nor has Mr. Iglesias met the remaining two prongs of the *Lafler* test. To find that he has met either would depend upon mere speculation as to whether the court would have accepted the plea or that Mr. Iglesias's sentence would have been less severe. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012) ("[A] defendant has no right to be offered a plea, nor a federal right that the judge accept it.")

Mr. Iglesias has failed to demonstrate that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court. Ground 1 is without merit.

**GROUND TWO:** **Ineffective assistance of counsel – failure to investigate and present exculpatory evidence related to witness William Stuelke**

In Ground 2, Mr. Iglesias argues that trial counsel was constitutionally ineffective for failing to interview or depose Mr. Stuelke, who would have testified that Mr. Lemming made up the story about seeing Mr. Iglesias leave the scene and tried to convince the other witnesses to lie as well. (Doc. 1).

In rejecting this claim on post-conviction review, the trial court first summarized the testimony at the evidentiary hearing on the issue:

> Mr. Silver stated that [he] remembered that Mr. William Stuelke was a witness present at the night of the fire. Mr. Stuelke provided a written affidavit stating that he heard the defendant's vehicle leaving. Mr. Silver testified that it was unnecessary to depose Mr. Stuelke based on the affidavit which included a statement mentions [sic] to other fires in the neighborhood. Mr. Silver thought that if Mr. Stuelke elaborated on other fires in the neighborhood he may implicate the defendant in those fires. Mr. Silver and the defendant discussed trial strategy and both felt that they had a very good case with alibi witnesses Mr. Ricky Anderson and Mrs. Robin Anderson. Additionally, Mr. Silver testified he thought he could impeach Ms. Randy Roemer with conflicting testimony.
>
> …
>
> [The defendant's father] also testified that the defendant never agreed not to call Mr. Stuelke.
>
> …
>
> The defendant further testified that he spoke to Mr. Silver about Mr. Stuelke and never advised Mr. Silver not to call him. The defendant felt Mr. Stuelke's testimony would have refuted Mr. Leming's [sic] testimony. He was able to locate Mr. Stuelke and he was available to testify at trial. However, Mr. Silver never followed up.
>
> During cross-examination the defendant testified that he was not aware that Mr. Sowell attempted to depose Mr. Stuelke twice.
>
> …

> As to Mr. Stuelke, Mr. Norville testified that he had difficulty locating Mr. Stuelke for deposition or for trial. Mr. Norville stated he wanted to consider Mr. Stuelke as a trial witness based on his statement placing the defendant at the scene which supported other witnesses statements. Mr. Norville felt Mr. Stuelke would have been a good witness for the State based on his written statement which suggested that the defendant may have been setting fires in the neighborhood with Mr. Anderson.
>
> …
>
> Mr. Tilton testified that he did not want to depose Mr. Stuelke because he was concerned Mr. Stuelke may add or delete something from the written statement. Additionally, Mr. Tilton did not want Mr. Stuelke to testify at trial. Mr. Tilton's strategy for trial was to focus on the Anderson's testimony that provided an alibi for the defendant.

(Exh. J, pp. 291-95) (internal citations omitted).

The trial court found that trial counsel was not ineffective in his decisions regarding Mr. Stuelke, finding that "Mr. Silver made a strategic decision not to depose or call Mr. Stuelke as a witness based on two alibi witnesses that were favorable to the defendant." (*Id.* at 296). The Fifth District Court of Appeal *per curiam* affirmed the post-conviction court's ruling without written opinion. (Exh. O).

"The performance inquiry will generally boil down to whether trial counsel's actions (or inactions) were the result of deficient performance or sound trial strategy. To protect counsel's independence, we start with the strong presumption that trial counsel's performance was constitutionally adequate." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1238 (11th Cir. 2011) (citations omitted). Mr. Iglesias has not shown that trial counsel's performance was deficient, where he did not pursue a witness who placed Mr. Iglesias at the scene of the crime and who the State wanted to call as its own witness. Mr. Stuelke's affidavit also stated: "This isn't the first time this has occurred and probly [sic] not the last. My wife is so terrified she doesn't want to sleep in her own house." (Exh. K, p. 17). Nor has Mr. Iglesias demonstrated that the outcome of his trial would have been different had Mr. Stuelke been deposed or testified at trial. Counsel made a strategic decision to avoid an unfavorable witness.

10

Mr. Iglesias has failed to demonstrate that the state court's rejection of his claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court. Ground 2 is without merit.

**GROUND THREE:  Ineffective assistance of trial counsel – failure to move to suppress pre-*Miranda* statement**

In Ground 3, Mr. Iglesias argues that trial counsel failed to move to suppress a statement made to police prior to being read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (Doc. 1). The specific statement at issue is Mr. Iglesias's statement to the fire marshal after being taken into custody but prior to being *Mirandized* that the night of the fire he was asleep and had been in bed since 10 p.m. Mr. Iglesias argues that the conflict between his pre-*Miranda* statement of his whereabouts and his alibi defense at trial (witnesses who stated Mr. Iglesias was at their home at the time of the fire) would have been the proper basis for a motion to suppress. (Doc. 1, pp. 12-14).

In summarily rejecting this claim on post-conviction review, the state court wrote:

> Motion [sic] to suppress is filed to suppress evidence gained improperly or illegally. In a claim for ineffective assistance of counsel based on counsel's failure to file a motion to suppress, a defendant must allege facts sufficient to show that counsel had a valid basis for filing a motion to suppress and that there is a reasonable probability it would have been granted.
>
> Here, Defendant fails to cite any improper conduct by law enforcement in obtaining evidence he seeks to suppress. Additionally, the statement made to law enforcement prior to Miranda that was admitted at trial was not incriminating. Therefore, trial counsel had no basis to seek suppression. Accordingly, Defendant's Grounds Four and Nine are conclusively refuted by the record.

(Exh. J, pp. 197-98) (internal citations omitted). The state court's ruling on this issue was affirmed by the Fifth District Court of Appeal. (Exh. O).

To determine whether trial counsel was constitutionally deficient for failing to file a motion to suppress, it is necessary to determine whether the motion had merit. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). *Miranda* protects a defendant's Fifth Amendment right against self-

incrimination and bars the admission of incriminating statements made during a custodial interrogation unless the proper *Miranda* warning was first given. First, a motion to suppress in this case would likely have failed because Mr. Iglesias voluntarily made the pre-*Miranda* statement and the statement alone was not self-incriminating. *See, e.g., McGriff v. Dep't of Corr.*, 338 F.3d 1231, 1236 (11th Cir. 2003) (*Miranda* "is intended to operate prophylactically, to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings.").

However, even assuming that trial counsel was deficient for failing to file a motion to suppress, Mr. Iglesias cannot demonstrate that but for that failure, the jury would have rendered a verdict of not guilty. Mr. Iglesias's pre-*Miranda* statement that he had been in bed since 10 p.m. could still have been used for impeachment purposes to impeach his testimony at trial that he was at the Andersons until 12:30 or 1:00 a.m. In *Harris v. New York*, 401 U.S. 222 (1971), "the Supreme Court held that a statement obtained in violation of *Miranda* could be used to impeach the testimony of a criminal defendant, so long as the statement was not involuntary." *Elliot v. Sec'y, Fla. Dep't of Corr.*, 483 Fed. Appx. 565, 567 (11th Cir. 2012) (rejecting habeas petitioner's argument that state court erred in allowing him to be impeached with statements that were obtained in violation of *Miranda*). Mr. Iglesias cannot show prejudice where his prior inconsistent statement, even if obtained in violation of *Miranda*, could have been used to impeach him. Nor can he show prejudice where his alibi witnesses' statements were inconsistent and there were multiple eyewitnesses placing him at the scene of the crime.

Mr. Iglesias has failed to demonstrate that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court. Ground 3 is without merit.

**GROUND FOUR:** Ineffective assistance of trial counsel – failure to conduct an adequate pretrial investigation

In Ground 4, Mr. Iglesias argues that trial counsel Harold Silver was constitutionally ineffective for failing to conduct an adequate pretrial investigation and should have contacted and interviewed multiple witnesses. (Doc. 1). Respondents contend that this claim is unexhausted and procedurally defaulted. (Doc. 8).

Mr. Iglesias raised this claim in his Rule 3.850 motion. However, in his brief on appeal from the denial of his Rule 3.850 motion, Mr. Iglesias only briefed Grounds 1, 2, and 9 of his Rule 3.850 motion. Mr. Iglesias wrote in his brief that he "is appealing all grounds of denial but will only be arguing the strongest grounds in this Brief . . ." (Exh. L, p. 2). However, pursuant to Rule 9.141(b)(3) of the Florida Rules of Appellate Procedure, failure to fully brief and argue points on appeal after receiving an evidentiary hearing in connection with a Rule 3.850 motion constitutes a waiver of those claims. *See, e.g., Leonard v. Wainwright*, 601 F. 2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Rule 3.850 relief to exhaust remedies).

Mr. Iglesias argues (Doc. 10) that his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). However, the Court in *Martinez* expressly excluded error arising from appeal in initial-review collateral proceedings from its holding:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *See* 501 U.S., at 754, 111 S.Ct. 2546; *Carrier,* 477 U.S., at 488, 106 S.Ct. 2639. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 566 U.S. at 16.

Nor has Mr. Iglesias shown that he should be able to obtain review of his procedurally defaulted claim by showing cause and prejudice or that a fundamental miscarriage of justice would occur if his claim were not considered. *See Coleman v. Thompson*, 501 U.S. 722, 750

(1991) (exception from procedural default bar exists where defendant can show cause for the default and prejudice from a violation of federal law); *Schlup v. Delo*, 513 U.S. 298, 323-27 (1995) (clarifying standard for the fundamental miscarriage of justice exception). Because Ground 4 of the petition is procedurally defaulted, it is precluded from federal review.

**CONCLUSION**

For the reasons stated herein, the Petition (Doc. 1) is **DENIED with prejudice**. The Clerk is directed to enter judgment accordingly. Any of Mr. Iglesias's allegations not specifically addressed herein have been found to be without merit. The Clerk is directed to terminate any pending motions and close the file.

Mr. Iglesias is not entitled to a Certificate of Appealability (COA). He does not have the absolute right to appeal. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id.* To merit a COA, he must show that reasonable jurists would find debatable both (1) the merits of an underlying claim, and (2) the procedural issues that he seeks to raise. *See* 28 U.S.C. § 2254(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Mr. Iglesias has not made the requisite showing. Finally, because he is not entitled to a COA, he is not entitled to appeal in forma pauperis.

ORDERED at Ocala, Florida, on December 3rd, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record
Gabriel Iglesias